## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

|  |  |  |
|---|---|---|
| _____ | ) | |
| **MICHELE BITTINGER** | ) | |
| | ) | |
| *Plaintiff,* | ) | |
| | ) | |
| **v.** | ) | **Case No.:** |
| | ) | **JURY TRIAL DEMAND** |
| **RYAN MCCARTHY, Acting Secretary,** | ) | |
| **DEPARTMENT OF ARMY,** | ) | |
| | ) | |
| *Defendant.* | ) | |
| _____ | ) | |

## <u>COMPLAINT</u>

**(Discrimination, Harassment, Hostile Work Environment and Retaliation in Federal Employment)**

Plaintiff Michele Bittinger, by her attorneys, Bell Law Group, PLLC, complaining of Defendant Ryan McCarthy, Acting Secretary Department of Army, alleges as follows:

1.  Plaintiff, Michele R. Bittinger, by and through counsel Bell Law Group PLLC, brings this action pursuant to Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e et seq., and Illinois Gender Violence Act, 740 ILCS 82/1 et seq., to remedy acts of employment discrimination and retaliation perpetrated against her by the Defendant, the United States Military Entrance Processing Command (USMEPCOM). Plaintiff contends that USMEPCOM officials discriminated against her, harassed her, and subjected her to a hostile work environment, based on her sex, and in retaliation for her protected EEO activity.

**Jurisdiction**

2. This Court has jurisdiction over the subject matter of this civil action pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-16.

**Venue**

3. Venue is proper in this judicial district under 42 U.S.C. § 2000e-5(f)(3) and 5 U.S.C.§ 7703(b)(2); as Plaintiff was employed by USMEPCOM at the time of her termination, Plaintiff's employment records are maintained by USMEPCOM in this jurisdictional district, and decisions averse to Plaintiff's employment that give rise to this civil action were made in this judicial district.

**Parties**

4. Plaintiff, Michele Bittinger, is a citizen of the United States and a resident of Illinois. At all times, relevant to this suit, the Plaintiff was employed with Department of the Army as a Quality and Requirements Branch Chief, Supervisory Health System Specialist, GS-0671-13 in the Clinical Quality Division, J-7 Medical Directorate of the United States Military Entrance Processing Command (USMEPCOM).

5. Defendant Ryan McCarthy is currently the Acting Secretary of Department of Army. Mr. McCarthy is being sued here in his official capacity only.

**Statement of Facts**

6. The Plaintiff was employed as a Quality and Requirements Branch Chief, Supervisory Health System Specialist, GS-0671-13. During the relevant time period

when the discriminatory acts occurred, the Plaintiff was supervised by Annette D. Waddelow, Deputy Director (initially Second Level).

7. The Plaintiff's first line supervisor during the relevant time period was Lieutenant Colonel (Lt Col) Rachelle Paul-Kagiri, Chief. After Lt Col Paul-Kagiri departed the organization, the Plaintiff's supervisory chain became: first level supervisor - Ms. Waddelow, second level supervisor - Army COL Scott G. Goodrich, Command Surgeon, Director.

8. Following COL Goodrich's departure from the organization, the Plaintiff's supervisory chain became: first level supervisor - Ms. Waddelow, second level supervisor - Army COL Niel A. Johnson, Command Surgeon, Director, and third level supervisor- Marine COL Kathy J. Maloney, Commander of USPEPCOM.

9. The Plaintiff participated in previous EEO activity for which Management retaliated against her. In June 2013, the Plaintiff testified in Lt COL Paul- Kagiri's EO complaint against Ms. Waddelow.

10. In December 2013, the Plaintiff was officially notified of being a witness in Ms. Waddelow's EEO complaint against COL Goodrich and she submitted a statement to the EEO Office stating she had not witnessed and had no first-hand knowledge of discriminatory behavior exhibited toward Ms. Waddelow by COL Goodrich.

11. In February 2014, Ms. Waddelow threatened Complainant, while showing her a Letter of Reprimand that she received as a result of the substantiated claims from Lt. COL Paul-Kagiri's EO investigation, she stated she almost got fired and knows what Plaintiff did with her testimony.

12. The Plaintiff avers that the Medical Directorate knew of her participation in Lt COL

Paul-Kagiri's EO complaint. The Plaintiff also testified in Ms. Waddelow's

complaint against COL Goodrich, in the presence of Ms. Waddelow, in a manner that

was not favorable to Ms. Waddelow.

13. On October 6, 2014, following numerous visits to the EEO office, the Plaintiff advised

    that she wished to formally file the EEO complaint that gave rise to the within case.

14. On February 10, 2014, Ms. Waddelow called the Plaintiff into her office to discuss

    performance objectives to which the Plaintiff did not agree. When the Plaintiff

    informed Ms. Waddelow that she would not sign and accept the rating changes made,

    Ms. Waddelow then snapped at the Plaintiff, lunged towards her by rolling towards

    her in a chair, grabbed the Plaintiff's right arm, stuck her finger into the Plaintiff's face

    and stated, "you listen here, you are going to sign these job objectives!"

15. When the Plaintiff attempted to exit the office from the hostile meeting, Ms.

    Waddelow told the Plaintiff to sit down, she was not to leave, thus holding the

    Plaintiff against her will.

16. When the Plaintiff grabbed the door knob to exit, Ms. Waddelow forcefully pushed

    her wheeled chair at the door and then sat in the chair to bar the Plaintiff from

    exiting.  Ms. Waddelow did not allow the Plaintiff to leave the room until the third

    time the Plaintiff pleaded that she move from the entrance.

17. The Plaintiff reported the incident to COL Goodrich on the same day she reported the

    matter to the EEO Office. COL Goodrich stated he had no power to take action

    regarding the matter. He further asked the Plaintiff to keep him out of the matter and

    leadership took no action to resolve it.

18. The Plaintiff also reported the incident on February 12, 2014 by giving COL Maloney

a letter to explain the incident in full detail but no action was taken to address it.

19. The Plaintiff was afraid to be in the workplace with Ms. Waddelow. In March 2014 she complained to Maurice Shoots, Chief, Civilian Personnel Division, J-1 regarding the matter.

20. On or about February 13, 2014, the Plaintiff was forced into a closed-door meeting with Ms. Waddelow again.

21. On or about March 26, 2014, the Plaintiff was issued two (2) letters of counseling from Ms. Waddelow, one dated February 27, 2014 and one dated March 26, 2014. These were baseless and only issued in effort to harass, discriminate, and retaliate against the Plaintiff.

22. On or about April 24, 2014, the Plaintiff filed a police report with the Naval Station Great Lakes Police Department for Ms. Waddelow assaulting and kidnapping her on February 10, 2014.

23. On or about May 20, 2014, the Plaintiff provided witness testimony in Ms. Waddelow's EEO complaint against COL Goodrich.

24. In June 2014, Ms. Waddelow ordered the Plaintiff not to have any personal conversations at work.

25. Ms. Waddelow continued to discriminate and retaliate against the Plaintiff by being argumentative and confrontational during Supervisors' meeting, soliciting negative comments from subordinate staff about Plaintiff, and setting her up to fail by intentionally not discussing important projects the Plaintiff was tasked with completing that often were time sensitive.

26. On or about September 24, 2014, Ms. Waddelow issued the Plaintiff a third letter of counseling without basis.

27. On or about October 8, 2014, the Plaintiff met with COL Johnson and informed him of Ms. Waddelow's treatment of her.

28. On or about October 23, 2014, as a result of reporting it to COL Johnson, Ms. Waddelow called the Plaintiff into her office and stated "How dare you complain to my boss about me and spread lies! You haven't heard the last of this from me!"

29. On October 24, 2014, the Plaintiff emailed COL Johnson requesting intervention, once again, into Ms. Waddelow's continued harassment but COL Johnson remained silent and never responded.

30. On or about November 6, 2014, the Plaintiff was issued a Notice of Proposed Suspension without pay from Ms. Waddelow for using a sports metaphor. There was no basis for the suspension and was further harassment and retaliation by Ms. Waddelow.

31. On or about November 12, 2014, Ms. Waddelow publicly accused the Plaintiff of time-card discrepancies and it was unfounded.

32. On or about December 9, 2014, COL Johnson met with the Plaintiff and Ms. Waddelow to discuss the pending suspension and he indicated the Notice of Proposed Suspension was without cause or justification and he would draft a Memorandum for Record (MFR) to be kept locally.

33. In November and December 2014, the Plaintiff necessitated multiple days of leave as a result of the abuse she was experiencing by Ms. Waddelow and contacted the Employee Assistance Program ("EAP") for help.

34. On January 27, 2015, the Plaintiff was leaving work to take her son to a doctor's appointment for which he had every Tuesday. As she was leaving, Ms. Waddelow screamed down the stairwell from the third floor to where the Plaintiff was located on the first floor, instructing her to return to work because COL Johnson wanted to speak with the Plaintiff. The Plaintiff informed her that she would be late for the appointment that management was aware of, but she obliged and went back upstairs and reported to COL Johnson, who had her come back so he could issue his decision on the Notice of Proposed Suspension.

35. The Plaintiff informed him she would need more time to read it before signing it but he did not allow her to take the letter to read and sign. However, two days later the Plaintiff noted the letter in her Employee Official Personnel File (EOPF).

36. COL Johnson claimed the Plaintiff refused to accept it, however, that was not the case.

37. On January 30, 2015, COL Johnson and Ms. Waddelow requested the Plaintiff meet them to discuss a project that the Plaintiff is tasked with completing each year. Within minutes into the meeting, COL Johnson falsely accused the Plaintiff of giving him a "look". When the Plaintiff asked "What look?", COL Johnson replied that if I give him "that look one more time…". Then shouted, "JUST GET OUT OF MY OFFICE NOW!" as he waived his arm and pointed his finger toward the door. The Plaintiff avers that she was not disrespectful during the meeting.

38. Prior to February 2015, Ms. Waddelow denied the Plaintiff's request to telework without basis.

39. On or about February 12, 2015, the Plaintiff met with COL Johnson for a "required"

One-On-One Meeting in his office where he unjustly subjected the Plaintiff to abuse. He accused the Plaintiff of not getting things done but couldn't provide any examples. He told her she had a bad attitude. He told her "She doesn't get it when everyone else gets it." The Plaintiff responded by stating that others don't have to work with a target on their back, and work while they are fighting for their livelihood at the same time. COL Johnson replied, "Yeah! Pretty much!"

40. The abuse continued on February 17, 2015 during a supervisor's meeting when COL Johnson, who was speaking, abruptly stopped and addressed the Plaintiff stating, that she had that "weird smile" on her face. He then asked if she had a comment or something else to say to the group. The Plaintiff states that he continued to call her out for unwarranted reasons during the entire meeting.

41. On or about March 5, 2015, the Plaintiff was directed by Ms. Waddelow to meet with her and Dan Jostes, in her office to conduct a mid-year performance review. However, this had never been done in the prior five (5) years of her employment. Ms. Waddelow presented the Plaintiff with three (3) pages of alleged discrepancies. The Plaintiff had never received a written mid-year performance review nor has she been subject to such a review with another person in the room. This was done to intimidate the Plaintiff, treat her different, and force her out of the workplace.

42. The Plaintiff was treated differently in the workplace then her counterparts by Ms. Waddelow and COL Johnson. The Plaintiff was spoken to in a different manner, including being screamed at, she was ignored, excluded from information, given different instructions, and isolated from others.

43. Ms. Waddelow also failed to stop Mr. Fuerte's frequent use of offensive, foul, and

degrading language in the office that the Plaintiff was subject to having to listen to it.

44. On March 13, 2015, Ms. Waddelow paced back and forth in front of the door of the HIV/DAT Office when the Plaintiff was meeting with Michael J. Long, Management Analyst. Ms. Waddelow does not subject the Plaintiff's co-workers to such treatment.

45. On April 20, 2015, Ms. Waddelow called the Plaintiff and accused her of using COL Johnson's office to make a phone call that was disruptive to other coworkers. The Plaintiff states that the phone call at issue was in regard to her disabled son's school nurse informing her that her son was rushed to the emergency room and that she needed to meet him there immediately.

46. On or about April 27, 2015, Ms. Waddelow advised the Plaintiff that she is tracking her time. Upon information and belief, the Plaintiff's co-workers are not subject to such treatment.

47. On or about May 12, 2015, Ms. Waddelow retroactively denied the Plaintiff one day of annual leave, resulting in the Plaintiff being placed in an "absent without leave" ("AWOL") status and loss of pay.

48. On or about May 22, 2015, Ms. Waddelow emailed the Plaintiff asserting that she had failed to send a report as requested, although the Plaintiff had previously sent it to Ms. Waddelow 3 times.

49. On or about May 28, 2015, Ms. Waddelow was openly rude to the Plaintiff during a staff meeting without basis. There was a big disparity between the way Plaintiff was treated and others in the meeting.

50. On or about June 10, 2015, Ms. Waddelow called the Plaintiff's cell and home

phones and left messages that the Plaintiff had to bring a doctor's letter before she could return to work. Ms. Waddelow also had another office administrative assistant email and call the Plaintiff throughout the day in effort to harass her.

51. On or about June 12, 2015, without basis, Ms. Waddelow announced she was cancelling the maxi-flex schedule that has been in place since 2009 and is integral to the Plaintiff's ability to balance work along with her responsibility to care for her special needs son.

52. On or about June 15, 2015, Ms. Waddelow called and emailed the Plaintiff at least 10 times, some of which were "hang ups with no message", explaining that the Plaintiff needed a doctor's note to return to work. This was done to intimidate and harass the Plaintiff and force her out of the workplace.

53. The Plaintiff was continually subjected to this type of behavior from management, which led to her using sick leave often in order to avoid the bullying and harassment she was subjected to when at work.

54. The Plaintiff avers that the harassment was so harsh that others in her office continued to be afraid to be seen with her for fear of management.

55. The Plaintiff was improperly denied her 2015 Within Grade Increase (WIGI).

56. As a result of the Defendant's unlawful discrimination and ongoing and continuous abusive treatment, the Plaintiff suffered mental and physical problems that caused her to be unable to perform her duties and she was removed for medical inability effective in December 2016. As set forth above the Defendant's unlawful discrimination and ongoing and continuous abusive treatment also adversely effected Plaintiff's son and his well-being.

10

57. The Plaintiff timely filed her EEO complaint with the Agency on November 12, 2014, and amended it on June 23, 2015, and again July 9, 2015.

58. The Plaintiff requested a hearing on her claims and Administrative Law Judge Reva Bauch was assigned to the case. The Plaintiff sought to pursue the complaint in District Court and on September 8, 2017, requested a dismissal from the EEOC and for the Defendant to issue a Final Agency Decision (FAD).

59. On October 4, 2017, Judge Bauch issued an order dismissing the case and instructing the Defendant to issue a FAD.

60. In or about February 2018 the Agency conducted a supplemental investigation regarding the Plaintiff's claims.

61. On January 22, 2019, the Plaintiff received the FAD and hereby proceeds with filing the within Complaint.

### <u>Count One</u>

### Discrimination

1. The forgoing paragraphs are realleged and incorporated by reference herein.

2. The Defendant's conduct as alleged above clearly constitutes discrimination on the basis of sex (female) that is in direct violation of Title VII of the Civil Rights Act.

3. The Defendant's stated reasons to justify their actions regarding the adverse and abusive conduct were not authentic and all reasons alleged are false. Instead, their reasons are merely pretext to hide the Defendant's discriminatory animus towards the Plaintiff.

## Count Two

### Harassment

4. The foregoing paragraphs are realleged and incorporated by reference herein.

5. The Defendant's conduct as alleged above clearly constitutes harassment that is in direct violation of Title VII of the Civil Rights Act on the basis of sex and reprisal.

6. The Defendant's actions continued to subject the Plaintiff to unwarranted harassment that was employed to intimidate her in the workplace.

7. The Defendants failed, on numerous occasions, to pursue corrective action even when the Plaintiff informed them of the harassing behavior.

## Count Three

### Hostile Work Environment

8. The forgoing paragraphs are realleged and incorporated by reference herein.

9. The Defendant's conduct as alleged above clearly constitutes a hostile and abusive working environment that is in direct violation of Title VII of the Civil Rights Act on the basis of sex and reprisal.

10. Plaintiff's supervisors and coworkers engaged in offensive conduct on an ongoing and regular basis that permeated the workplace.

11. The Defendant's stated reasons to justify their actions regarding the adverse and offensive conduct were not authentic and all reasons alleged are false. Instead, their reasons are merely pretext to hide the Defendant's discriminatory animus towards the Plaintiff.

12. This continuous harassment created a hostile working environment and altered the terms

and conditions of the Plaintiff's employment. Indeed, this unwanted and unwelcome harassment was so severe and pervasive that the Plaintiff had to take leave and time off from work to avoid the hostility and to avoid the continued bullying, and ultimately led to her being unable to perform the duties of her position.

## Count Four

### Retaliation

13. The foregoing paragraphs are realleged and incorporated by reference herein.

14. The Defendant's actions took place after the Plaintiff engaged in EEO activity including being a witness in 2 EEO complaints, filing her own EEO complaint, and making other protected complaints.

15. The Defendant's conduct as alleged above constitutes retaliation against the Plaintiff because she previously had engaged in protected EEO activity (participation/testimony, as well as complaints) pursuant to Title VII of the Civil Rights Act.

16. The Defendant had knowledge of the Plaintiff's engagement of prior protected activity and Management officials were clearly aware of the nature of the Plaintiff's complaint regarding her protected EEO status.

17. Retaliatory acts include, but are not limited to, constant criticism, ridicule, negative performance reviews, baseless or unusually harsh disciplinary actions, and denial of within-grade-increase.

18. The paragraphs aforementioned show that a causal link has been demonstrated that her prior EEO activity and the adverse actions taken by the Agency were not wholly unrelated.

19. The stated reasons for the Defendant's conduct are not the true reasons for the action taken,

but instead were pretext to hide the Defendant's retaliatory animus towards the Plaintiff.

## Count Five

### Illinois Gender Violence Act

20. The foregoing paragraphs are realleged and incorporated by reference herein.

21. Ms. Waddelow engaged in a pattern and practice of harassing the Complainant on the basis of her sex, including but not limited to, physically touching her, physically prohibiting her from leaving her office, intimidating her, and creating a threatening work environment for the Plaintiff.

22. Despite management's knowledge of Ms. Waddelow's behavior, they failed to properly supervise Ms. Waddelow, they failed to act with respect to the Plaintiff's complaints and address the misconduct, and specifically COL Johnson personally encouraged and/or assisted in the harassment and allowed the physical touching, intimidating, and threatening behavior to continue against the Plaintiff.

## Prayer for Relief

WHEREFORE, the Plaintiff requests that the court award her:

(a) The sum of two million dollars in compensatory damages suffered because of the discrimination and retaliation in order to make the Plaintiff whole again;

(b) Loss of wages at the pay grade Plaintiff held prior to termination, including pay increases that are applicable, benefits, and other emoluments of employment the Court deems applicable;

(c) Costs and reasonable attorney's fees incurred with this lawsuit with interest therein; and

(d)  Any other damages and further just relief that the Court deems applicable to this

lawsuit.

## **<u>Jury Demand</u>**

The Plaintiff requests trial by jury.


Dated: January 24, 2019


Respectfully Submitted,

s/Susan F. Tylar
_____

Susan F. Tylar, Esq.
BELL LAW GROUP, PLLC
100 Quentin Roosevelt Blvd.
Suite 208
Garden City, New York 11530
516-280-3008 Phone
516-706-4692 Fax
st@belllg.com

15